JERRY LYERLA, APPELLANT, *v.* DAVID W. WATTS, ELSIE J. WATTS, AND BERT LARSON, RESPONDENTS.

No. 6260

February 16, 1971                              482 P.2d 318

*R. E. Holland,* of Carson City, for Appellant.

*Goldwater, Hill, Mortimer and Rose,* of Reno, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

This case presents a classic example of the difficulties that arise on appeal when the record presented to the appellate

court fails to include a stenographic record of the proceedings before the trial court and the statement of the evidence in lieu thereof is inadequate. NRCP 75(n).[1]

The plaintiff-appellant, Lyerla, commenced this action in the district court to recover $6,900, representing the sums he had paid defendants-respondents, the Wattses, on the purchase of the stock of the R. & B. Corporation, whose main asset consisted of the inventory and equipment of the 7 Seas bar and restaurant in Reno. The Wattses answered the complaint by asserting a counterclaim in two counts against Lyerla, seeking (1) recovery of the balance of the total purchase price of the stock and (2) recovery of moneys R. & B. Corporation had allegedly paid for expenses incurred by Lyerla during the time he operated the bar. The district court, sitting without a jury, denied count 1 of the counterclaim and permitted the Wattses to withdraw count 2. Apparently in an attempt to leave the parties where it found them, the court denied Lyerla's claim, and this appeal resulted.

1. *The Facts.*

By written contract of sale dated November 1, 1968, the Wattses sold to Lyerla and Bert Larson[2] all the stock of the R. & B. Corporation for the total sum of $29,000, payable as follows: (a) $8,000 on the signing of the contract; (b) $5,000 on or before February 1, 1969; and (c) the balance at the rate of $350 per month, to be paid on the first day of every month, commencing March 1, 1969, until paid in full. In the agreement, the only restriction on the transfer of the stock was that the stock would be held in escrow and delivered to Lyerla *after* all the terms of the agreement had been met.[3]

---

[1]"RULE 75. RECORD ON APPEAL

". . .

"(n) *Appeals When No Stenographic Report Was Made.* In the event no stenographic report of the evidence or proceedings at a hearing or trial was made, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection, for use instead of a stenographic transcript. This statement shall be served on the respondent who may serve objections or propose amendments thereto within 10 days after service upon him. Thereupon the statement, with the objections or proposed amendments, shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the court in the record on appeal."

[2]Lyerla joined Larson as a party defendant when he commenced the action.

[3]Excerpt from November 1, 1968, contract of sale:

"IT IS FURTHER AGREED that all of the stock of R. & B. Corporation, endorsed in blank by the Seller [David W. Watts and Elsie J.

The contract provided, however, that Lyerla was to have full control and management of the corporation and its properties while the stock was in escrow.[4] Lyerla took possession of the bar and operated it continuously until he was ousted by Mr. Watts on April 3, 1969.

Lyerla and Larson each paid one-half of the $8,000 initial down payment. Before February 1, 1969, Lyerla also paid $2,100 on the February installment, but Larson paid nothing after the initial down payment. Lyerla also paid the Wattses 3 months' interest (for November and December 1968 and January 1969) at the rate of $122 per month. On February 1, 1969, Lyerla was $400 delinquent in the sums he then owed the Wattses under the contract. However, in March 1969 he paid the installment due that month, which the Wattses accepted without protest.

On April 3, 1969, Lyerla left $350 in the bar for the Wattses, plus $100 for pay of the bartender. That evening, without notice to Lyerla, Mr. Watts appeared and, joined by Larson, took the moneys in the till, including the $350 Lyerla had left for him and the bartender's $100, plus the inventory. Watts then took over the operation of the bar and restaurant, assisted by Larson.

Lyerla demanded return of the moneys he had paid under the contract. The demand was refused, and this action resulted.

2. *The Restitution.*

The Wattses claim that Lyerla by his default has forfeited all rights under the contract of sale and that he is not entitled to the return of any of the moneys received by them. We do not agree. The contract contained no forfeiture provision, nor any provision for liquidated damage in case of default. The only restriction in the sale agreement was that the stock would remain in escrow "until Buyer has fully complied with all of

Watts], together with the Minute Book, franchise, and any other paraphernalia establishing the legal status of said corporation, is to be placed in escrow with ........................................................................................, in Reno, Nevada, with appropriate instructions that same be held by said company until Buyer [Jerry D. Lyerla and Bert Larson] has fully complied with all of the terms of this agreement, at which time said stock, Minute Book, seal and all other paraphernalia is to be delivered by Seller to Buyer."

[4]Excerpt from November 1, 1968, contract of sale:

"IT IS FURTHER AGREED that while the stock of R. & B. Corporation remains in escrow, as aforesaid, Buyer shall have control and complete management of the corporation and its assets, liabilities and business."

the terms of this agreement." The contract in the next paragraph provided: "[W]hile the stock . . . remains in escrow, . . . Buyer shall have control and complete management of the corporation and its assets, liabilities and business." The Wattses made no attempt to recover the stock until December 1969, eight months after they ousted Lyerla. We believe that, under the factual posture of this case, Lyerla is entitled to recover the sums he paid on the purchase of the stock. The Wattses, by their conduct, rescinded the contract and also gained forfeiture of the consideration that Lyerla had paid toward the total purchase price. As the court said in Johnston v. Gilbert, 382 P.2d 87, 89 (Ore. 1963):

". . . Forfeiture and rescission are incompatible—they will not mix. The concomitant of rescission is restitution, not forfeiture. Where there has been, as here, rescission by conduct of the parties, a purchaser is entitled to restitution of the amount paid on the purchase price less the reasonable rental value of the premises while he has had possession."

This court held in Stanley v. Limberys, 74 Nev. 109, 112, 323 P.2d 925, 927 (1958):

"The right to rescission, however, is not an unconditional one. Under the maxim that 'he who seeks equity must do equity' the plaintiff, seeking rescission, must restore the defendant to the position he occupied before the transaction in question. Such restoration entails the restoration of all benefits and profits which the plaintiff may have realized from the transaction."

The Wattses claim on appeal that they did incur damages during Lyerla's tenure that should be set off against his claim. There is nothing in the statement of the evidence before us to indicate that the Wattses suffered damages. Counsel for the Wattses argues that the trial judge, in what may be interpreted as an attempt to leave the parties where he found them, weighed and considered Mr. Watts's answers to the interrogatories, which had appended thereto copies of certain checks of R. & B. Corporation allegedly covering expenses incurred by Lyerla when he had possession of the bar. However, the interrogatories were never received in evidence and may not be considered.[5] Additionally, with permission of the court, the

---

[5]Excerpt from oral argument before this court on January 11, 1971: Question by the Court: "You filed no additional statement [of the evidence] pursuant to Rule 75(n)?"

Answer by Mr. Robert E. Rose, counsel for the Wattses: "No, I

Wattses through their counsel withdrew count 2 of their counterclaim.

Since the record before us is absent any evidence to support a setoff in damages suffered by the Wattses as a result of Lyerla's operation of the bar, we must reverse the order of the district court and remand the case with instructions to enter judgment in favor of Lyerla for $6,900 plus interest at 7 percent per annum on said sum from April 3, 1969, and with costs and such attorney's fees as the district court may allow, if any. NRS 18.010.

It is so ordered.

ZENOFF, C. J., BATJER, THOMPSON, and GUNDERSON, JJ., concur.

filed none, your Honor, in the record, because I thought the . . . statement in the answers to our interrogatories, which I feel the district court could consider, adequately set forth those damages."

Q: "How does the court consider them if they are not offered into evidence during the course of trial? I really don't know. It's like taking a deposition and keeping it in the office. It has to be used some way; doesn't it?"

A: "I would simply say a district court sitting without a jury can consider all matters in the record, whether or not introduced into evidence."

Q: "Do you have any simple authority to that effect?"

A: "Not at this time."